UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
OCALA DIVISION

WAYNE ANTHONY STEWART,

    Plaintiff,

v.                                              Case No. 5:20-cv-181-MAP

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.
_____/

**ORDER**

    This is an appeal of the administrative denial of supplemental security income (SSI) and disability insurance benefits (DIB).  *See* 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff argues the Administrative Law Judge (ALJ) erred by discounting a consultative examiner's opinion regarding the extent of his mental impairments and by failing to subpoena medical records, as required by the Commissioner's Hearings, Appeals and Litigation Law Manual (HALLEX).  After considering Plaintiff's argument, Defendant's response, and the administrative record (Docs. 16, 20, 21), I find the ALJ applied the proper standards, and the decision that Plaintiff is not disabled is supported by substantial evidence.  I affirm the ALJ's decision.

    *A. Background*

    Plaintiff Wayne Stewart was born on November 17, 1977. (R. 42)  He was 33 years old on his alleged disability onset date of October 1, 2011. (R. 17, 30)  He was born in Jamaica and raised by his grandparents. (R. 551) He testified he dropped out of school in the seventh grade to work in the mountains of Jamaica. (R. 46, 551) After traveling to Orlando on a

1

church trip in 1999, Plaintiff decided to stay in the United States, eventually settling in the Orlando area. (R. 551) He married in 2000, and he lives with his wife, their two sons, and his two stepsons. (R. 568) He has past work experience as a self-employed taxi driver. (R. 46) Plaintiff alleges disability due to back and leg pain, obesity, depression, anxiety, high blood pressure, sleep apnea, chest pain, body aches, dizziness, and headaches. (R. 324)

Plaintiff testified he stopped driving his cab on his onset date because "my body wouldn't allow me to do it." (R. 61)  In his words, "I've been very sick.  Very sick.  My, my body.  I think I'm losing memories and I'm not doing well overall.  My whole body is not doing good.  I'm pretty bad." (R. 47)  He suffers from chronic pain "all over my body.  I got severe pain in my lower back, my shoulders, my hands, and my legs are pretty much dead.  My legs are all gone pretty much." (*Id.*)  He broke his right leg in a car accident in Jamaica in 1993, and it did not heal properly.  He uses a cane to help stabilize him when necessary.  He cannot attend his sons' basketball games because bleachers are uncomfortable for him and "my right leg doesn't, doesn't bend up." (R. 49)

Plaintiff rarely leaves the house.  He said, "I just don't want to see too much folks no more.  I'm maybe selfish now or something.  I don't know.  I'm nuts." (R. 50)  He started treating with psychiatrist Bhaskar Raju, M.D. in 2017, because he "wasn't great in my head. I thought I was losing memories.  I wasn't functioning as I, as I should so I went to get help." (R. 54-55)  The ALJ noticed Plaintiff closing his eyes during his hearing testimony and asked if the light bothered him.  Plaintiff responded that closing his eyes was "something that I always do" because of pain. (R. 56)  He later testified that "I've been having a lot of pain in my head.  I've been feeling kind of crazy-like.  Psycho in a sense.  But I don't know what kind

of pain it is. I really can't tell you what kind of pain it is." (R. 60) His wife does all of the housework and errands. He testified he lies down most of the day and watches TV. (R. 48)

After a hearing, the ALJ found Plaintiff suffers from the severe impairments of degenerative disc disease of the cervical, lumbar, and thoracic spine, inflammatory arthritis, and obesity.[1] (R. 20) The ALJ considered Plaintiff's hypertension, sleep apnea, and mental impairments to be non-severe. (*Id*.) Aided by the testimony of a vocational expert (VE), the ALJ determined Plaintiff is not disabled as he has the RFC to perform sedentary work with limitations:

> [H]e can occasionally climb ramps and stairs, but never climb ladders, ropes and scaffolds. He can occasionally stoop, kneel, crouch and crawl. He can occasionally operate foot controls with his bilateral lower extremities. He can frequently handle and finger with his bilateral upper extremities. He must avoid even moderate exposure to workplace hazards such as moving machinery, moving mechanical parts and unprotected heights.

(R. 24) The ALJ found that, with this RFC, Plaintiff could not perform his past relevant work as a taxi driver but could work as an addresser, a call out operator, or a document preparer. (R. 31) The Appeals Council denied review. Plaintiff, who has exhausted his administrative remedies, filed this action.

B. *Standard of Review*

To be entitled to DIB and/or SSI, a claimant must be unable to engage "in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[1] Plaintiff's date last insured (DLI) for DIB purposes was December 31, 2017. (R. 20) For DIB claims, a claimant is eligible for benefits if he demonstrates disability on or before his DLI. 42 U.S.C. § 423(a)(1)(A). Because Plaintiff's DLI is December 31, 2017, he must show he was disabled on or before that date. *See Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).

to last for a continuous period of not less than 12 months." *See* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *See* 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

The Social Security Administration, to regularize the adjudicative process, promulgated detailed regulations that are currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). Under this process, the Commissioner must determine, in sequence, the following: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment(s) (*i.e.*, one that significantly limits his ability to perform work-related functions); (3) whether the severe impairment meets or equals the medical criteria of Appendix 1, 20 C.F.R. Part 404, Subpart P; (4) considering the Commissioner's determination of claimant's RFC, whether the claimant can perform his past relevant work; and (5) if the claimant cannot perform the tasks required of his prior work, the ALJ must decide if the claimant can do other work in the national economy in view of his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). A claimant is entitled to benefits only if unable to perform other work. *See Bowen v. Yuckert*, 482 U.S. 137, 142 (1987); 20 C.F.R. § 404.1520(f), (g); 20 C.F.R. § 416.920(f), (g).

In reviewing the ALJ's findings, this Court must ask if substantial evidence supports those findings. *See* 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The

ALJ's factual findings are conclusive if "substantial evidence consisting of relevant evidence as a reasonable person would accept as adequate to support a conclusion exists." *Keeton v. Dep't of Health and Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citation and quotations omitted). The Court may not reweigh the evidence or substitute its own judgment for that of the ALJ even if it finds the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's "failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining the proper legal analysis has been conducted mandates reversal." *Keeton*, 21 F.3d at 1066 (citations omitted).

    C. Discussion

        1. *Dr. Addis's opinion*

Plaintiff argues the ALJ improperly discounted the opinion of Susan Addis, Ph.D., the psychologist who performed a consultative examination of Plaintiff at the agency's request on December 19, 2016. According to Plaintiff, the ALJ's reasons for assigning Dr. Addis's opinion partial weight – its inconsistency with the opinion of consultative neuropsychologist Kristjian Olaffson, Ph.D. and Plaintiff's unremarkable mental status exams – overlook more probative evidence from Dr. Raju (doc. 20 at 14-15). The Commissioner counters that "[a]s a consultative examiner, Dr. Addis' opinion was entitled to no particular weight or deference." (doc. 21 at 10). I find that the ALJ's consideration of Dr. Addis's opinion is supported by substantial evidence.

The method for weighing medical opinions under the Social Security Act is found in the regulations at 20 C.F.R. §§ 404.1527(c), 416.927(c).[2] Relevant here, the opinions of examining physicians are generally given more weight than non-examining physicians, treating more than non-treating physicians, and specialists more than non-specialist physicians. 20 C.F.R. §§ 404.1527(c)(1-5), 416.927(c)(1-5). A court must give a treating physician's opinions substantial or considerable weight unless "good cause" is shown to the contrary. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause for disregarding such opinions "exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (citation omitted).

This rule – the "treating physician rule" – reflects the regulations, which recognize that treating physicians "are likely to be the medical professionals most likely to provide a detailed, longitudinal picture of . . . medical impairment." 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). With good cause, an ALJ may disregard a treating physician's opinion but "must clearly articulate the reasons for doing so." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (*quoting Phillips v. Barnhart*, 357 at 1240 n.8). Indeed, the ALJ must state the weight given to different medical opinions (those of treating and non-treating physicians) and why. *Id*. Otherwise, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence." *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981).

---

[2] This section was rescinded on March 27, 2017, but still applies to claims filed before this date. Plaintiff filed his claim in July 2016.

Dr. Addis examined Plaintiff once, on December 19, 2016. She reported that Plaintiff's "judgment and insight are poor. He was oriented to time, person, place and situation." (R. 552) His eye contact was "moderate," his speech was "appropriate," and "[h]is mood seemed to be sad." (*Id.*) Dr. Addis observed that Plaintiff was unable to calculate serial sevens or perform simple multiplication problems and "was unable to recall three out of three words after a 5 minute delay." (*Id.*) She diagnosed severe major depressive disorder and generalized anxiety disorder. The psychologist concluded: "The claimant could benefit from counseling to learn how to cope with chronic pain. His depression and anxiety are associated with his inability to work, as well as to the chronic pain. He could also use medication management." (R. 553) According to Dr. Addis, Plaintiff's depression and anxiety impair his recent, immediate, and remote memory as well as his social skills, judgment, and ability to perform repetitive tasks.

The ALJ assigned Dr. Addis's opinion partial weight. He compared Dr. Addis's conclusions with those of Dr. Olafsson, a neuropsychologist who tested Plaintiff's IQ, memory, and executive functioning at treating psychiatrist Dr. Raju's request in December 2017 (a year after Dr. Addis's exam). Plaintiff tested in the "impaired" range on every test Dr. Olaffson administered. But Dr. Olaffson emphasized:

> Performance on tests designed to identify malingering results revealed poor results. He provided consistent clinical information. He appeared to put forth limited effort during the evaluation. His performance on the Tests of Memory Malingering revealed suboptimal effort (Trial 1=28/50, Trial 2: 29/50). He achieved a score of 4/15 on the Rey 15-Item Test, which indicates suboptimal effort. The validity and reliability of the current evaluation, therefore, appears to be a poor indicator of [Plaintiff's] actual functioning.

(R. 571) Overall, Dr. Olaffson concluded that the "test results do not appear valid due to suboptimal effort." (R. 572)

The ALJ assigned great weight to Dr. Olaffson's opinion because it was consistent with other record evidence, namely the opinions of Pauline Hightower, Psy.D. and David Tessler, Psy.D. Drs. Hightower and Tessler are state agency psychological consultants who reviewed Plaintiff's medical records at the initial and reconsideration stages and found his mental impairments caused only mild limitations in the four broad areas of mental functioning (understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself) and were non-severe. (R. 27, 103, 136-38) The ALJ also referenced Plaintiff's treatment for low back pain in June 2017. (R. 28) Fernando Miranda, M.D. of Neurology and Neurosurgery Associates, P.A. noted, under the heading "Psychiatric":

> Normal. Oriented to time, place, person & situation. No agitation. No anhedonia. Not anxious. Behavior is appropriate for age. No compulsive behavior. Sufficient fund of knowledge. Sufficient language. Patient is not in denial. Not euphoric. Not fearful. No flight of ideas. Not forgetful. No grandiosity. No hallucinations. Not hopeless. Appropriate affect. No increased activity. No memory loss. No mood swings. No obsessive thoughts. Not paranoid. Normal insight. Normal judgment. Normal attention span and concentration. No pressured speech. No suicidal ideation.

(R. 588)

And, although Plaintiff argues that the ALJ "failed to even consider the treatment notes from Mr. Stewart's treating psychiatrist, Dr. Raju[,]" this is incorrect (doc. 20 at 15). The ALJ devoted an entire page of his opinion to discussing Dr. Raju's records, ultimately discounting the psychiatrist's medical source statement as inconsistent with his treatment notes. (R. 29) Plaintiff had seven appointments with Dr. Raju between October 2017 and October 2018. (R. 714-17) Plaintiff was depressed, tired, and anxious after dealing with chronic pain for years. But Dr. Raju consistently noted Plaintiff was alert, oriented, his

attention span was intact, his thought processes were clear, and he had fair insight and judgment. Dr. Raju provided talk therapy and prescribed Trintellix 10 mg, an antidepressant, never altering Plaintiff's dose over their year-long treatment relationship. Despite this conservative care, Dr. Raju completed a check the box medical source statement at Plaintiff's counsel's request in November 2018, indicating Plaintiff had marked limitations in the four broad areas of mental functioning and could not work. (R. 720-21)

Against this backdrop, I find that the ALJ's decision to assign only partial weight to Dr. Addis's consultative opinion is supported by substantial evidence. The ALJ was required to consider Dr. Addis's opinion, and he did. Dr. Addis was a one-time consultative examiner and not a treating physician; the ALJ was not required to articulate good cause for discounting it. The ALJ cited and discussed other record evidence that contrasted with Dr. Addis's conclusions, namely Dr. Olaffson's examination results, Drs. Miranda and Raju's mental status findings, and the conclusions of state agency consultants Dr. Hightower and Tessler. Importantly, Plaintiff does not challenge the ALJ's decision to discount Dr. Raju's medical source statement. Plaintiff's first argument fails.[3]

2. *Duty to develop the record*

Plaintiff's next argument is that the ALJ failed to develop the administrative record because he did not subpoena updated medical records from three treating physicians who did

---

[3] I reiterate that, when reviewing an ALJ's decision, my job is to determine whether the administrative record contains enough evidence to support the ALJ's factual findings. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, ___ U.S. ___; 139 S.Ct. 1148, 1154 (2019). "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Id.* In other words, I am not permitted to reweigh the evidence or substitute my own judgment for that of the ALJ even if I find the evidence preponderates against the ALJ's decision. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

not respond to Plaintiff's requests for them. The Commissioner concedes that certain treatment notes are not in the record but argues Plaintiff has not shown prejudice. I agree with the Commissioner.

Social Security proceedings are inquisitorial rather than adversarial, and the ALJ has the duty "to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000). The ALJ "has a basic obligation to develop a full and fair record." *Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). But "there must be a showing of prejudice before it is found that the claimant's right to due process has been violated to such a degree that the case must be remanded to the [Commissioner]" to develop the record. *Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). "The court should be guided by whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Id*. (internal citation and quotation marks omitted).

Here, on November 8, 2018, before Plaintiff's hearing, Plaintiff's counsel wrote to the ALJ notifying him that she had been trying to obtain records from three of Plaintiff's treatment providers (rheumatologists Jeffrey Poiley, M.D. and Nimesh Dayal, M.D., and general surgeon Owen Fraser, M.D.) since September 2018. At Plaintiff's December 6, 2018 hearing, this exchange occurred:

> ALJ: And I know there was a five-day letter.
>
> ATTY: Yes. We have been trying to get some records from these doctors. We're not sure if there's very many dates of service and they would be from, you know, just the most recent. Like for example, Dr. Foley's [phonetic] notes are in 7F and so it would be just anything after that that we're missing, and we haven't gotten any response from Dr. Diale [phonetic] who's the rheumatologist – who's his rheumatologist. And we think those records might have something worthwhile in it.

| | | |
|---|---|---|
| ALJ: | | Okay.  Yeah, I noticed in the letter you were requesting a subpoena. |
| ATTY: | | Yes. |
| ALJ: | | I instructed my case technician to go ahead and send requests to those doctors and we'll see – we'll try that first before we, we consider a subpoena.  But that did go out a few days – those requests did go out a few days ago. |
| ATTY: | | Okay.  Thank you, Your Honor. |

(R. 43-44)  The records from Dr. Dayal's office – most notably the results of a nerve conduction study of Plaintiff's lower extremities – are not in the record, but Drs. Poiley and Fraser's treatment notes are.[4]  Despite the ALJ's statement at the hearing, there is no record evidence the ALJ requested the records.  And, in his written decision, the ALJ formally denies Plaintiff's subpoena request:

> The claimant, through his representatives, submitted or informed me about all written evidence at least five business days before the date of the claimant's scheduled hearing, which included a written request to issue a subpoena for medical records.  (20 C.F.R. § 404.935(a) and 416.1435(a); Ex. B24E).  However, the subpoena request did not conform to the mandatory requirements set forth by agency policy, including a statement of important facts to be established and why such facts could not be proven without a subpoena. (*See* HALLEX I-2-5-78).  Accordingly, due to its insufficiencies, the written subpoena request is hereby DENIED.

(R. 18)

Citing HALLEX (an agency handbook that defines procedures for carrying out agency policy), Plaintiff argues the ALJ's obligation to fully develop the record required him to issue a subpoena for the missing treatment notes.  The Eleventh Circuit has not decided whether

---

[4] Plaintiff testified that he recently had a nerve conduction study of his feet but could not remember the doctor's name or the results. (R. 60-61)  Although some of Dr. Poiley's notes are in the record, Plaintiff contends they are incomplete. (*see* R. 525-40)

11

HALLEX creates judicially enforceable rights. *See McCabe v. Comm'r of Soc. Sec.*, 661 F. App'x 596, 599 (11th Cir. 2016); *George v. Astrue*, 338 F. App'x 803, 804-05 (11th Cir. 2009). Even if HALLEX does carry the force of law – a "very big assumption," *George*, 338 F. App'x at 805 – remand is required only if the ALJ violates HALLEX procedures and only if the violation prejudices the claimant. *McCabe*, 661 F. App'x at 599 (even if HALLEX binding, mere showing that agency violated HALLEX not enough for remand, plaintiff must show prejudice); *Cohan v. Comm'r of Soc. Sec.*, No. 6:10-cv-719-Orl-35DAB, 2011 WL 3319608, at *5 (M.D. Fla. July 29, 2011) (same). The relevant HALLEX provision states:

> If a claimant submits a subpoena request at least ten business days before the hearing date or an ALJ finds that the circumstances in 20 CFR 404.935(b) and 416.1435(b) apply, the ALJ will evaluate the request. When all other means of obtaining the information or testimony have been exhausted . . . an ALJ will issue a subpoena if: [t]he claimant or ALJ cannot obtain the information or testimony without the subpoena; and [t]he evidence or testimony is reasonably necessary for the full presentation of the case.

HALLEX, I-2-5-78. As the Commissioner points out, Plaintiff's letter asks for a subpoena but does not explain if or why the information is reasonably necessary for the ALJ to decide his case (R. 414-18); the ALJ did not abuse his discretion in denying the subpoena request.

Additionally, even assuming (without deciding) that HALLEX carries the force of law *and* that the ALJ violated it, Plaintiff has not shown he was prejudiced by the ALJ's failure to subpoena the records. *See McCabe*, 661 F. App'x at 599. Dr. Fraser's treatment notes are in the record, yet Drs. Dayal and Poiley's notes are missing. (R. 507-09, 516-23)  Plaintiff does not explain how these notes would have changed the ALJ's decision, beyond speculating that they would have. Plaintiff's second argument fails.

*D. Conclusion*

For the reasons stated above, the ALJ's decision is supported by substantial evidence.

It is ORDERED:

    (1) The ALJ's decision is AFFIRMED; and

    (2) The Clerk of Court is directed to enter judgment for Defendant and close the case.

DONE and ORDERED in Tampa, Florida on August 30, 2021.

MARK A. PIZZO
UNITED STATES MAGISTRATE JUDGE